**Arthur FRIEDMAN, Plaintiff,**

v.

**ADAMS RUSSELL CABLE SERVICES—NEW YORK, INC., Defendant.**

**No. 84 Civ. 8109 (PNL).**

United States District Court, S.D. New York.

Jan. 15, 1986.

Kassner & Haigney, New York City, for plaintiff.

Choate, Hall & Stewart, Boston, Mass., for defendant.

OPINION AND ORDER

LEVAL, District Judge.

This is an action for damages and injunctive relief under the antitrust laws. The plaintiff, Arthur Friedman, alleges that the defendant, Adams Russell Cable Services, the holder of the cable television franchises in Harrison and Port Chester, New York, has abused its monopoly power by illegally

tying together its provision of two levels of cable services. All material facts are undisputed. The defendant contends that plaintiff's claim fails as a matter of law, and it has accordingly moved this court for summary judgment pursuant to Rule 56(b) Fed.R.Civ.P. The motion is granted.

In 1982 the defendant acquired the cable television franchises in Harrison and Port Chester, New York, and it has been the sole provider of cable television to these communities ever since. The plaintiff is a resident of the township of Harrison, and is a subscriber of defendant's cable system. The defendant offers three tiers of cable services to its subscribers: Basic, Super-Cable, and Premium. Basic service includes primarily station signals which may also be received with a traditional VHF antenna, as well as some additional channels. Super-Cable is comprised of satellite-delivered programming such as Cable News Network, MTV, and USA Network. The Premium tier, also commonly known as "pay cable", includes Home Box Office, The Disney Channel, Sports Channel, and other movie and sports channels.

Although the various tiers are separately priced, they are not made available in all combinations. A subscriber may choose to receive only Basic service (at $4 per month), Basic and Super-Channel (for an additional $9.50 per month), or Basic, Super-Cable, and one or more of the Premium channels (at approximately $9.95 per Premium channel). Plaintiff desires to obtain certain Premium channels without subscribing to Super-Cable. The defendant will not permit this, although it admits that such a combination would present no technological problems; the Premium channels are only made available to those subscribing to Super-Cable. It is this arrangement, linking the sales of Premium channels to the sale of Super-Cable, that the plaintiff attacks as a violation of the Sherman Antitrust Act.

Superficially, the facts in this case resemble an illegal tying arrangement. As explained by the Supreme Court, "a tying arrangement may ·be defined as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product ..." *Northern Pacific Railway v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). In many circumstances the finding of a tying arrangement will be considered a *per se* violation of the antitrust laws. However, as explained by the Second Circuit in *Coniglio v. Highwood Services,* 495 F.2d 1286 (2d Cir.), *cert. denied,* 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974), the elements of an unlawful tying arrangement are not present here.

The plaintiff in *Coniglio* contested the practice of the Buffalo Bills football team requiring season ticket purchasers to also buy tickets to a number of pre-season games. In denying this claim, the court ruled that there are four elements to an "illicit tying arrangement." The plaintiff must show: "(1) two separate and distinct products ...; (2) sufficient economic power in the tying market to coerce purchases of the tied product; (3) *anticompetitive effects in the tied market;* " and (4) a requisite volume of interstate commerce. *Coniglio, supra* at 1289 (emphasis added). Because there were "neither actual nor potential competitors to the Bills in the [Buffalo] professional football market" *id.* at 1291, the Court of Appeals concluded that there were, and could be, no anti-competitive effects of the tying arrangement. Consequently, the court denied relief under the antitrust laws.

The same hurdle proves insurmountable to the plaintiff in the instant action. The defendant enjoys an absolute lawful monopoly in the relevant geographic market for the tied product (Super-Cable). There are no competitors providing cable services in Harrison, New York, and none are likely for the remaining six years of the present franchise agreement. Thus, exactly as in the Buffalo Bills case, no competitor is harmed by the arrangement; the elements of the cause of action are not made out.

Plaintiff makes several attempts to elude the force of *Coniglio,* but none are suc-

cessful. He argues that defendant's conduct should not be evaluated solely within the narrow parameters of an illegal tying arrangement, but should be seen more broadly, as an abuse of monopoly power. The same argument, however, was also made in *Coniglio*, and the court concluded that since the defendant "has not used the tying arrangement either to prevent competition or destroy it, its ticket sale practice does not represent an unlawful abuse of its monopoly power." *Coniglio, supra*, at 1293. Similarly, in *Berkey Photo v. Eastman Kodak*, 603 F.2d 263, 275 (2d Cir. 1979), *cert. denied*, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980), the Court of Appeals made it clear that as to a claim of abuse of monopoly power predicated on the extension of that power into other markets, the relevant inquiry is whether the monopolist is "using its monopoly power in one market to gain a competitive advantage in another...." Where the monopolist already possesses a lawful monopoly in both markets no competitors exist to suffer any ill effects.

The plaintiff alleges in his brief that the anti-competitive effects of defendant's conduct is felt in other towns where the defendant is able to use its inflated monopoly profits to "low ball" the competition and thus acquire additional franchises. I doubt that this argument is economically sound. It is the value of the additional franchise, as perceived by the bidders for it, that determines what each will bid and not the amount of money a bidder has earned from other ventures. If a bidder pays more for the new franchise than it is worth, he will have made a bad investment. But even if the argument were sound, it would not avail plaintiff in this cause of action. Any resulting injury would be to the competitors for those other communities and not the plaintiff. He would lack standing to prosecute their claims. *See Triple M Roofing v. Tremco*, 753 F.2d 242, 247 (2d Cir. 1985).

Plaintiff also suggests that *Coniglio* was an aberration and should no longer be considered good law. There is nothing to support this claim. Within the last year the Second Circuit has required a showing of anticompetitive effect in the tied market in order to make out an illegal tying arrangement. *See Power Test Petroleum Distr. v. Calcu Gas*, 754 F.2d 91, 96 (2d Cir.1985). Moreover, recent Supreme Court decisions are fully consistent with the position of the Second Circuit. While examining a tying arrangement challenged in *Jefferson Parish Hospital v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 1560, 80 L.Ed.2d 2 (1984), the Court explained that "application of the per se rule focuses on the probability of anticompetitive consequences." The Court further stated that where, as in the instant case, "a purchaser is 'forced' to buy a product he would not otherwise have bought even from another seller in the tied product market, there can be no adverse impact on competition.... Without a showing of actual adverse effect on competition, [plaintiff] cannot make out a case under the antitrust laws...." *Id.*, 104 S.Ct. at 1560, 1568. It appears the rule of *Coniglio* has been strengthened.

Finally, the plaintiff claims in his brief that the defendant acquired its franchises in Harrison and Port Chester through misrepresentation and fraud. This issue is not advanced in the complaint; nor is it a claim for which relief lies under the federal antitrust laws.

Because of the absence of any possible anti-competitive effects, the tie defendant imposes between its provision of Premium channels and Super-Cable is not illegal under the Sherman Antitrust Act. Neither is it an abuse of defendant's monopoly power. Accordingly, defendant's motion for summary judgment is granted.

SO ORDERED.